# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,                    Civil Action No.:

    Plaintiff,

v.

Sealed Air Corp., d/b/a Kevothermal
LLC,

    Defendant.

## COMPLAINT AND JURY TRIAL DEMAND

## NATURE OF ACTION

    This is an action under the Equal Pay Act of 1963 ("EPA"), enacted as an amendment to the Fair Labor Standards Act of 1938 ("FLSA"), to restrain the unlawful payment of wages to employees of one sex at rates less than the rates paid to employees of the opposite sex and to collect back wages due to Patti ("Gilda") Guerra as a result of such unlawful payments. This is also an action under Title VII of the Civil Rights Act of 1964 as amended to correct unlawful employment practices on the basis of sex due to wage disparity and national origin. As alleged with greater particularity in the paragraphs below, the Equal Employment Opportunity Commission ("EEOC" or the "Commission") alleges that Sealed Air Corp. d/b/a Kevothermal LLC ("Defendant") discriminated against its female Production Supervisor, Gilda Guerra, by paying her less than her male comparator despite performing work which was substantially equal. The

EEOC also alleges that Defendant discriminated against its Production Supervisor, Guerra, based on her national origin when it advised her that she should only speak English with her coworkers and subordinates and that she should not speak to them in Spanish.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 16(c) and 17 of the FLSA, as amended, 29 U.S.C. §§ 216(c) and 217, to enforce the requirements of the EPA, codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d) and Sections 706(f)(1) and (3) of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Title I, Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico.

3. More than thirty days prior to the institution of this action, the Charging Party filed two charges of discrimination with the Equal Employment Opportunity Commission alleging violations of the EPA and Title VII by Defendant.

4. EEOC conducted an investigation related to the charges of discrimination.

5. Based on the investigation, the EEOC determined there was reasonable cause to believe the Charging Party was subjected to unlawful violation of the EPA and Title VII.

6. Prior to institution of this lawsuit, the Commission's representatives

attempted to eliminate the unlawful employment practices alleged below and to effect voluntary compliance with Title VII through informal methods of conciliation, conference, and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. § 2000e-5(b).

7. By letter dated May 3, 2016 the EEOC advised Defendant that informal conciliation efforts had been unsuccessful.

8. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **PARTIES**

9. The EEOC is the agency of the United States charged with the administration, interpretation, and enforcement of Title VII and the EPA and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3) and 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c) and 217, as amended by Section 1 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and Public Law 98-532 (1984), 98 Stat. 2705.

10. At all relevant times, Sealed Air Corp. d/b/a Kevothermal LLC has continuously and is now doing business in the State of New Mexico and the City of Albuquerque.

11. At all relevant times, Defendant has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d).

12. At all relevant times, Defendant employed more than 15 employees.

13. At all relevant times, Defendant has continuously employed employees

engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(b), (i) and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i) and (j) and have continuously been enterprises engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s), in that said enterprises have continuously been enterprises whose annual gross volume of sales made or business done is not less than $500,000.

14. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## **GENERAL ALLEGATIONS**

15. In August 2011, Defendant promoted Charging Party, Gilda Guerra, a female, to the position of Production Supervisor.

16. In September 2011, Defendant hired a male employee, Juaquin Ernesto Romero, to the position of Production Supervisor.

17. Guerra and Romero were both Production Supervisors and performed substantially equal work.

18. Guerra and Romero worked during the same shift.

19. Guerra trained Romero when he was hired by Defendant.

20. Guerra and Romero reported to the same Production Manager.

21. Guerra and Romero had similar qualifications and management experience.

22. In 2011, Defendant paid Guerra $14.85 per hour plus an additional $1

differential for the night shift.

23. In 2011, Defendant paid Romero $20.00 per hour plus an additional $1 differential for the night shift.

24. Romero informed Guerra that his rate of pay was higher than hers.

25. In 2012, Guerra discussed the difference in her pay rate with her manager and the Human Resources manager.  They did not deny that Guerra was paid less than Romero. Guerra informed them that she would be filing a charge of discrimination because of sex.

26. Shortly before Guerra filed her charge of discrimination, Defendant moved Romero to a lead supervisor position, requiring Guerra to report to him though they still performed the same job duties and Guerra would fill in for Romero when he was not available or was not present on the work floor.

27. On December 27, 2012, Guerra filed a charge of discrimination with the EEOC alleging discrimination based on Title VII due to unequal pay based on sex.

28. After she filed her charge and after several months of Romero supervising Guerra, Defendant moved Romero to a lateral position within the company.

29. Guerra remained in her position as a Production Supervisor. While continuing to perform her duties as a Production Supervisor she continued to be paid at a lower rate than that paid to Romero when he was a Production Supervisor.

30. In 2013 Defendant increased Guerra's pay to $17.45. This pay rate was still lower than the pay rate paid to Romero while he was a Production Supervisor.

31. In 2014, Defendant increased Guerra's pay to $17.80. This was the last

pay increase Guerra received.

32. At all relevant times, and throughout the continuation of Guerra's employment, Defendant paid Guerra lower rates than it paid to the male Production Supervisor, Romero.

33. In November 2013, Guerra was advised by Defendant's Human Resources manager, Terrielynn Sloan, that she was no longer permitted to speak to fellow employees in Spanish while performing her job duties.

34. In December 2013, Guerra was again directed not to speak Spanish with fellow employees, including her subordinates, while working.

35. Guerra was advised by Defendant that she needed to advise her subordinates that they were not permitted to speak Spanish while on the job. Guerra informed Human Resources that it was illegal to prohibit employees to speak Spanish and refused to notify her subordinates.

36. Defendant employs at least two individuals who are monolingual. These employees only speak Spanish. In the past, Guerra, with the knowledge of Defendant, has provided translation for these employees during work trainings and other work related programs and activities.

37. Guerra informed Defendant that if she could not speak Spanish she would not be able to communicate with the monolingual employees.

38. Guerra was again informed that she should refrain from speaking Spanish at work after an employee complained to Defendant that Guerra had spoken in Spanish to another supervisor.

39. In January, 2014, Guerra filed a second charge of discrimination alleging a violation of Title VII based on national origin because Defendant did not permit her to speak Spanish at the workplace.

40. Defendant's workforce is almost entirely composed of Hispanic workers.

41. Defendant admits that it has an English only policy.

42. Guerra discontinued her employment with Defendant in August of 2014.

## FIRST CLAIM FOR RELIEF
### (Equal Pay Act )

43. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force as if fully set forth herein.

44. Since at least September 2011, Defendant has violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2) by paying the female Production Supervisors lower rates than paid to the male Production Supervisor.

45. Since at least September 2011, Defendant has employed at least two female Production Supervisors and one male Production Supervisor.

46. At all relevant times, all the Production Supervisors have performed substantially equal work.

47. At all relevant times, all the Production Supervisors have performed jobs requiring comparable skill, effort, and responsibility.

48. At all relevant times, all the Production Supervisors have worked under similar working conditions.

49. Guerra trained Romero when he was hired as a Production Supervisor.

50. Until Guerra complained about the wage disparity, all female Production

Supervisors and Romero were supervised by the same Production Manager.

51.  At all relevant times, Defendant paid the female Production Supervisors less than the male Production Supervisor.

52.  Guerra complained to her human resources manager about the pay disparity between her pay rate and that paid to Romero.

53.  Guerra's human resources manager did not deny that there was a difference in pay between her pay and Romero's pay rate.

54.  Defendant did not increase the female Production Supervisors' rate of pay or cure the violation when the female Production Supervisors complained about the difference in pay.

55.  Until her final day of employment, Defendant continued to pay Guerra less than it had paid Romero for working the Production Supervisor position.

56.  As a result of the acts complained above, Defendant has unlawfully withheld payment of wages due to Guerra.

57.  The unlawful practices complained above were and are willful.

## SECOND CLAIM FOR RELIEF
### (Title VII – Wage Discrimination)

58.  The allegations contained in the foregoing paragraphs are incorporated and re-alleged with the same force as if fully set forth herein.

59.  Since at least September 2011, Defendant has engaged in unlawful employment practices in violation of Section 703 of Title VII, 42 U.S.C § 2000e-2 (a)(1) by compensating its female Production Supervisors, including Gilda Guerra, less than the male Production Supervisor because of their sex, female.

60. At all relevant times, Romero was paid more than Guerra.

61. At all relevant times, Guerra and Romero had similar managerial experience.

62. At all relevant times, Guerra and Romero worked under similar working conditions.

63. Guerra confronted Defendant about her pay rate and the fact that it was lower than Romero's pay rate.

64. Defendant did not deny that Guerra was paid less than Romero.

65. Defendant did not increase Guerra's rate of pay or cure the violation when she complained about the difference in wages.

66. The unlawful employment practices complained of above were intentional and done with malice or reckless indifference to the federally protected rights of Guerra.

67. The effect of the unlawful employment practices complained of above has been to deprive Guerra of equal employment opportunities and otherwise adversely affect Guerra's status as an employee because of her sex, female.

## THIRD CLAIM FOR RELIEF
### (Title VII – National Origin – Disparate Treatment)

68. The allegations contained in the foregoing paragraphs are incorporated by reference with the same force as if fully set forth herein.

69. Since at least November 2013, Defendant has engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by engaging in disparate treatment in the terms and conditions of employment based upon national origin, Hispanic, including against Gilda Guerra, by implementing and

enforcing a restrictive language policy.

70. Defendant is aware that the majority of its workforce is Hispanic.

71. Defendant was aware that some of its employees did not speak English and only spoke Spanish.

72. Defendant is aware that some of its Spanish speaking employees were provided with translation during work meetings and trainings.

73. Guerra provided translation during trainings and meetings to the Spanish speaking monolingual employees.

74. Defendant was informed by Guerra that its language policy was restrictive and unlawful.

75. Guerra was told on at least three different occasions that she should refrain from speaking Spanish while at work.

76. Defendant admits that it has an English only policy.

77. The unlawful employment practices complained of above were intentional and done with malice or reckless indifference to the federally protected rights of Guerra.

78. The effect of the unlawful employment practices complained of above has been to deprive Guerra of equal employment opportunities and otherwise adversely affect Guerra's status as an employee because of her national origin, Hispanic.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, servants, employees, attorneys, and all persons in active concert or

participation with them, from engaging in wage discrimination because of sex;

  B. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, servants, employees, attorneys, and all persons in active concert or participation with them, from paying wages to employees of one sex at rates less than the rates at which they pay wages to employees of the opposite sex for substantially equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions;

  C. Order Defendants to implement and carry out practices, policies, programs which provide equal employment opportunities for women and which eradicate its past and present illegal employment practices;

  D. Grant a judgment requiring Defendant to pay appropriate back wages in an amount to be determined at trial, an equal sum in liquidated damages, and prejudgment interest, and provide other affirmative relief necessary to eradicate the effects of their unlawful employment practices;

  E. Grant any such other and further relief as the Court deems just, equitable, necessary in the public interest;

  F. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of national origin, or which creates, facilitates, condones, tolerates and or encourages discriminatory language policies or rules and disparate treatment in the terms and conditions of employment;

    G.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees whose nationality or ethnic background favors a language other than English and which eradicate the effects of its past and present unlawful employment practices;

    H.    Order Defendant to make whole Charging Party by providing appropriate back pay with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to: elimination of the discriminatory language policy or rule, or in the alternative, modification of said policy or rule to bring it into compliance with Title VII;

    I.    Order Defendant to make whole Charging Party by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complain of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

    J.    Order Defendant to pay Charging Party punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

    K.    Grant any such other and further relief as the Court deems just, equitable, necessary in the public interest; and

    L.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

    M.    The Commission requests a jury trial on all questions of fact raised by its complaint.

-13-

RESPECTFULLY SUBMITTED this 25th day of July, 2016.

        P. DAVID LOPEZ
        General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION
        131 M Street, NE
        Washington, D.C. 20507


        MARY JO O'NEILL
        Regional Attorney

        */s/ Wasan Awad*
        WASAN AWAD
        Trial Attorney

        EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION
        Phoenix District Office
        3300 N. Central Ave., Suite 690
        Phoenix, AZ 85012

        Attorneys for Plaintiff